[No. 4584–II.   Division Two.   January 15, 1982.]

GARY GEPPERT, ET AL, *Appellants,* v. THE STATE OF WASHINGTON, ET AL, *Respondents.*

*Donald F. Mansfield,* for appellants.

*Ronald A. Roberts, Paul E. Sinnitt,* and *Annon W. May,* for respondents.

PETRICH, J.—Gary Geppert and 14 other landowners appeal a summary judgment dismissing a claim for flood damage against Arnold E. Schaefer, Louis Steiner and Theophil Baginski, who were sued in their individual capacities as a result of actions taken while they were commissioners of Drainage District No. 10, Pierce County, Washington. The central issues are whether the commissioners are covered to any extent by official immunity and whether any material issue of fact supports a claim of negligence. We affirm.

In 1933, at the confluence of the Puyallup River and Clear Creek, the State of Washington built two "tide gates" which were designed to prevent the Puyallup's water from backing up along the smaller tributary and flooding the adjoining land. The commissioners of Drainage District No.

10, established in 1912, had responsibility under RCW 85.06.080 and RCW 85.07.170 for maintaining drainage systems within their district. These commissioners routinely inspected the "tide gates," performed the necessary maintenance, and paid for expenses out of their annual budget of approximately $4,000. Commissioner Schaefer was first elected to his 6–year term in November 1972. Commissioner Steiner was elected to his 6–year term in November 1974. And Commissioner Baginski, elected in November 1977, took office on December 1, 1977, and attended his first meeting on December 3, 1977.

During the course of one such inspection in October 1977, Schaefer observed that some of the steel hinges were broken on one gate, that one hinge had already fallen off the other gate, and that some of the timbers were split. Schaefer soon conferred with Steiner, the chairman of the District's commissioners. They decided that the gates should be pulled up and transported to Schaefer's farm where Schaefer, a machinist, had a workshop, and where he could immediately begin a program of refabricating the hinges, ordering new creosoted timbers, and then incorporating the hinges and timbers into the gates.

The gates were then pulled up on October 18, and Schaefer worked on them until November 17, when he made arrangements for a wrecker to assist him in the reinstallation. At a low tide on November 25, Schaefer installed one gate; however, upon returning the next day, he found that due to a high tide and rain, the Puyallup River had risen so high that any effort to reinstall the other gate would be fruitless. Not until December 5 did the water recede enough to enable Schaefer to reinstall the second gate. By that time, however, nearby dwellings and property had suffered extensive damage due to flooding along Clear Creek. The above facts are uncontroverted.

The injured landowners brought this action against the State, Drainage District No. 10, and the commissioners individually and their marital communities. The complaint against the commissioners is that Schaefer was negligent in

removing the gates and in allowing them to remain out of the water for almost 2 months, and that Steiner and Baginski knew of the same but did nothing about it.

The individual commissioners then brought a summary judgment motion supported by affidavits and a memorandum of authority. They denied any negligence and argued that they were not liable as a matter of law because of official immunity. Moreover, their affidavits gave a brief recounting of the above facts. The plaintiffs' memorandum in opposition made several references to Schaefer's deposition, but it did not conform to Pierce County Superior Court Rule 56, requiring that deposition testimony "be presented by affidavit containing excerpts of the testimony relied upon by the party using such testimony, with reference to line and page of source." The plaintiffs, however, indicated the page and line when referring to Schaefer's deposition in their memorandum.

The plaintiffs' memorandum referred to the following statements made by Schaefer in his deposition: (1) That the tide gates were in such poor condition in early October, they were ready to go down the Puyallup River, (2) that the gates could have been repaired in place, (3) that he was aware the river is usually higher in the winter months, and (4) that he had considered the above factors in making the decision to remove the gates. The trial court refused to consider the references to Schaefer's deposition and granted the commissioners' summary judgment motion.

The plaintiffs now appeal and claim that the court erred in granting summary judgment to the defendants. Two basic issues arise out of their appeal: (1) Whether the commissioners are covered to any extent by official immunity, and (2) whether any material issue of fact supports a claim of negligence.

We turn first to the issue of official immunity. Washington has long held that public officers are personally immune from tort actions when the action complained of is discretionary, as opposed to ministerial. *Whatcom County v. Langlie,* 40 Wn.2d 855, 246 P.2d 836 (1952); *Clipse v.*

*Gillis,* 20 Wn. App. 691, 582 P.2d 555 (1978). To prevent the discretionary–ministerial distinction from becoming a conclusory one, and to come to a reasoned characterization, *Evangelical United Brethren Church v. State,* 67 Wn.2d 246, 255, 407 P.2d 440 (1965), suggested four preliminary questions as guidelines:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program, or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy . . . as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act . . . require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite . . . authority . . .? If these preliminary questions can be clearly and unequivocally answered in the affirmative, then the challenged act, omission, or decision can, with a reasonable degree of assurance, be classified as a discretionary governmental process and nontortious, regardless of its unwisdom. If, however, one or more of the questions call for or suggest a negative answer, then further inquiry may well become necessary, depending upon the facts and circumstances involved.

Although *Evangelical United Brethren Church* dealt with a governmental immunity issue, later courts have adopted its reasoning to questions of official immunity. *See Moloney v. Tribune Publishing Co.,* 26 Wn. App. 357, 613 P.2d 1179 (1980); *Clipse v. Gillis, supra.*

In light of the above questions, then, we inquire into Schaefer's and Steiner's initial decision to pull up the tide gates for repair. The affidavits and memorandum before the court below clearly show that the repair of the tide gates was integrally involved in, and most certainly necessary to, attaining the Drainage District's objective of preventing flooding. The supporting documents, moreover, indicate that the decision was dependent upon basic policy evaluation, judgment and expertise. Schaefer and Steiner, knowing that the gates could possibly be repaired in place,

ultimately concluded that repairing the gates at Schaefer's farm would be the most expeditious and economical course of action. Although both realized that the threat of high water was greater during the winter months, there is nothing that indicates any more practicable option open to them at that time. Finally, RCW 85.06.080 and RCW 85.07.170 gave the commissioners the requisite authority for their decision. The affirmative answers, therefore, point to a discretionary act.

■ We are also mindful that our categorization should be guided by the purpose of the discretionary immunity doctrine, as it would be difficult to conceive of any official act, no matter how directly ministerial, that did not admit of some discretion in the manner of its performance. *See King v. Seattle*, 84 Wn.2d 239, 525 P.2d 228 (1974). The public policy of granting official immunity has been well stated by Dean Prosser:

> Public servants would be unduly hampered and intimidated in the discharge of their duties, and an impossible burden would fall upon all our agencies of government if the immunity to private liability were not extended, in some reasonable degree, to those who act improperly, or exceed the authority given.

W. Prosser, *Torts* § 132, at 987 (4th ed. 1971).

With the above considerations in mind, we hold that the commissioners involved are immune from tort liability for the initial decision to pull up the tide gates and have them repaired by Schaefer at his farm.

Whether official immunity extends to Schaefer's actual course of repair is another question. *See, e.g., Stewart v. State*, 92 Wn.2d 285, 597 P.2d 101 (1979); *Sado v. Spokane*, 22 Wn. App. 298, 588 P.2d 1231 (1979). However, we need not decide that question as another issue is dispositive. The trial court properly granted defendants' summary judgment motion because the plaintiffs did not raise any issue of fact that supports a claim of negligence in the course of repair.

■ Summary judgment is a procedure for testing the existence of a party's evidence. Only where it appears from

the pleadings, depositions, and affidavits on file that a party will not be able to present an issue of material fact before the trier of fact should a summary judgment be granted. *Cofer v. County of Pierce,* 8 Wn. App. 258, 505 P.2d 476 (1973). A material fact is one upon which the outcome of the litigation depends. *Jacobsen v. State,* 89 Wn.2d 104, 569 P.2d 1152 (1977).

It is true that the burden is on the party moving for summary judgment to demonstrate that there is no genuine dispute as to any material fact, and that all reasonable inferences from the evidence must be resolved against the moving party. *Morris v. McNicol,* 83 Wn.2d 491, 494, 519 P.2d 7 (1974); *Barber v. Bankers Life & Cas. Co.,* 81 Wn.2d 140, 500 P.2d 88 (1972). However, this does not mean that the party moving for summary judgment is compelled to meet every speculation, conjecture or possibility by alleging facts to the contrary.

*Bates v. Grace United Methodist Church,* 12 Wn. App. 111, 115, 529 P.2d 466 (1974). After the defendants supported their motion for summary judgment with their affidavits and memorandum recounting the aforementioned facts, it became incumbent upon the plaintiffs to create a genuine issue by properly setting forth such facts.

The plaintiffs opposed the defendants' motion by a memorandum of authority which referred to Schaefer's deposition. Even if the lower court had considered these references, there is no factual dispute raised as to whether Schaefer was negligent in his repair of the gates, in not repairing them sooner or in not procuring a replacement for the gates. Furthermore, we disagree with the plaintiffs' contention that the facts involving any possible negligence were exclusively within the control of the moving party. Certainly other qualified machinists could have rendered an opinion regarding the reasonableness of the method and the timeliness of repair, and other qualified engineers could have given an opinion as to whether the defendants' failure to obtain a replacement breached a duty or was below the proper standard of care. This the plaintiffs did not do; they simply did not raise any issue of material fact.

Through summary judgment procedure, courts pierce the formal allegations pleaded. *Lundgren v. Kieren,* 64 Wn.2d 672, 393 P.2d 625 (1964). The whole purpose of summary judgments would be defeated if a case could be forced to trial by a mere assertion that an issue exists without a showing of evidence. *Meissner v. Simpson Timber Co.,* 69 Wn.2d 949, 421 P.2d 674 (1966). Negligence claims normally involve factual disputes, but, if no genuine issue of material fact is presented when the motion for summary judgment is heard, the issue may be summarily resolved. *Lundgren v. Kieren, supra.*

■ Finally, we turn to Baginski's involvement in this action. The plaintiffs argue that Baginski's knowledge of the repair being done on the gates and of the threat of flooding created liability when he did nothing in response. Even assuming that Baginski had such knowledge, unless he had any power to take corrective action, his knowledge alone does not create liability. *See, e.g., Johnson v. Harrigan–Peach Land Dev. Co.,* 79 Wn.2d 745, 489 P.2d 923 (1971) (corporate officer liability). Baginski's affidavit states that his only involvement with the removal, repair, and replacement of the gates related to his approval of the related expenses at a commissioners' meeting on December 3, 1977, 2 days after his term had begun. Baginski, then, is not subject to any liability as he not only was powerless to act prior to December 1, but he was also helpless to undo the damage after that date.

Accordingly, we affirm.

REED, C.J., and PEARSON, J., concur.