[No. 18150-2-III. Division Three. June 1, 1999.]

GEORGE RHODES, ET AL., *Appellants*, v. URM STORES, INC., *Respondent*.

![black redacted bar]

*Paul J. Burns*, for appellants.

*Lukins & Annis, P.S.*, by *Michael J. Hines*, for respondent.

SCHULTHEIS, C.J. — George Rhodes appeals the summary judgment dismissal of his handicap discrimination claim against former employer URM Stores, Inc. Mr. Rhodes was fired from his job as a truck driver the second time he tested positive for controlled substances. He claims on appeal his chemical dependency is a handicap that URM failed to accommodate. We affirm.

URM is a wholesale food distributor. After enactment of the Drug-Free Workplace Act of 1988 (41 U.S.C. §§ 701-707), URM adopted a policy regarding drug and alcohol use by its employees. This policy, set forth in the employee handbook, requires employees to remain "free from effects of alcohol or illegal drugs at all times during the work day" and to refrain from possessing or consuming alcohol or illegal drugs on company property. Employees are further informed that they are subject to drug tests and to discharge without advance notice if they refuse to cooperate in a test or otherwise violate the policy.

After he was hired by URM in 1977, Mr. Rhodes logged over a million miles on public roads until he was terminated in 1994. He admits he traveled many of those miles under the influence of alcohol or illegal drugs such as marijuana and cocaine. He also admits he was aware of URM's anti-drug and antialcohol policies and knew he could be terminated if he violated them. When URM began giving drug tests, he ingested a drug-masking chemical called "Test Clean" before each urine examination in order to test negative for controlled substances.

On April 5, 1994, "Test Clean" failed and Mr. Rhodes tested positive for marijuana. Rather than terminate him, URM took him off duty with pay and referred him to Cascade Counseling Services pursuant to the Employee Assistance Program. Mr. Rhodes admits he lied about his drug use during Cascade's evaluation. Dr. Ronald Springel, clinical director of Cascade, diagnosed Mr. Rhodes as "a long time marijuana abuser on the border of being dependent on the drug." He also indicated Mr. Rhodes's "concern over jeopardizing his job may be a strong enough motivator alone to prevent further abuse of marijuana." Dr. Springel recommended various steps Mr. Rhodes could take to address his marijuana abuse, including (1) total abstinence from marijuana and all other mind-altering drugs; (2) attendance in an alcohol/drug information course; (3) at least 20 weeks of counseling; (4) submission to random drug testing for up to 60 months; (5) attendance in a chemical dependency treatment program if future drug tests are positive; and (6) agreement that continued employment depends on complying with these recommendations.

After Cascade submitted its evaluation, Mr. Rhodes and URM executed a reentry agreement under which Mr. Rhodes was allowed to return to work on a conditional basis. The terms of the agreement required him to abide by URM's antidrug policy, submit to random "body fluid analysis," and attend a weekly support group meeting of his choice for 20 weeks. Failure to submit to drug testing and relapse or noncompliance with the agreement would be

grounds for disciplinary action, including termination. Mr. Rhodes signed the agreement on April 18, 1994, and resumed truck driving for URM the next day. He chose to attend Narcotics Anonymous for 20 weeks.

By mid-June 1994 Mr. Rhodes was again using marijuana and cocaine and concealing its use. A drug test in September 1994 indicated he had cocaine in his system. URM terminated him the next day. During inpatient treatment that began a month later, Mr. Rhodes admitted for the first time that he had a serious long-term drug problem. Since his discharge in November 1994, he has attended an outpatient recovery program and has remained clean and sober.

Mr. Rhodes filed suit against URM in October 1995 alleging handicap discrimination in violation of RCW 49.60.180. URM moved for summary judgment on the grounds that Mr. Rhodes did not present a prima facie case of handicap discrimination and that URM's antidrug policy is a bona fide occupational qualification for truck drivers. The trial court granted URM's motion and dismissed Mr. Rhodes's claim with prejudice.

On appeal, Mr. Rhodes contends summary judgment was inappropriate because he established a prima facie case of a handicap and URM's failure to accommodate that handicap. We review the summary judgment de novo, considering the evidence in the light most favorable to Mr. Rhodes. *Ruff v. King County*, 125 Wn.2d 697, 703, 887 P.2d 886 (1995); *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 65, 837 P.2d 618 (1992). Summary judgment is justified if the pleadings, affidavits and depositions establish there is no issue of material fact and the moving party is entitled to judgment as a matter of law. *Ruff*, 125 Wn.2d at 703. Here, Mr. Rhodes's failure to establish a prima facie case of handicap discrimination supports summary judgment dismissal of his claim. *Cluff v. CMX Corp.*, 84 Wn. App. 634, 638, 929 P.2d 1136 (1997).

Under RCW 49.60.180(2) it is an "unfair practice" to discharge any person from employment on the basis of physical disability. To establish a prima facie case of handi-

cap discrimination, Mr. Rhodes must prove (1) he is handicapped, (2) he is qualified for his position, and (3) he was replaced by a person who is not handicapped. *Lords v. Northern Automotive Corp.*, 75 Wn. App. 589, 601, 881 P.2d 256 (1994). The record indicates Mr. Rhodes generally performed his work duties satisfactorily. Neither party addresses whether he was replaced by a nondisabled worker, but we need not consider this element because he fails to prove he was handicapped.

 "Handicap" is not defined by statute, but the regulations accompanying the statute define it as an abnormal condition that is medically diagnosable, exists as a record or history, or is perceived to exist, whether or not it really exists. WAC 162-22-040(1); *Doe v. Boeing Co.*, 121 Wn.2d 8, 14-15, 846 P.2d 531 (1993). The definition also requires a showing that the "abnormality" is the reason the person was discharged. WAC 162-22-040(1)(a). "Condition" is not defined in the regulations, but is generally perceived as a "particular mode of being[.]" Random House Dictionary 425 (2d ed. 1987). Although the question of whether a person is handicapped is an issue of fact, dependent on expert medical documentation and state of mind, the trial court may decide factual issues as a matter of law if there is only one conclusion reasonable minds could reach. *Doe*, 121 Wn.2d at 15; *Michelsen v. Boeing Co.*, 63 Wn. App. 917, 920, 826 P.2d 214 (1991). Thus, in addressing whether Mr. Rhodes was handicapped, the questions before us are whether (1) he suffered an abnormal condition, and (2) URM discharged him because of that condition. *Doe*, 121 Wn.2d at 16-17.

In *Brady v. Daily World*, 105 Wn.2d 770, 777, 718 P.2d 785 (1986) and *Phillips v. City of Seattle*, 111 Wn.2d 903, 910, 766 P.2d 1099 (1989), the Washington Supreme Court declined to hold that alcoholism is a handicap as a matter of law, leaving the issue one of fact for the jury. Mr. Rhodes contends his drug dependency is medically documented and is at least an issue of material fact defeating summary judgment. According to Dr. Springel's deposition and April 12

evaluation, Mr. Rhodes was a marijuana abuser, not chemically dependent. Dr. Springel described a dependent person as one who has lost the ability to control the use of a controlled substance. He indicated he might have diagnosed Mr. Rhodes as dependent after the September drug test, but only in light of information revealed after Mr. Rhodes lost his job. Even Mr. Rhodes admitted he did not realize he had a drug dependency until he sought counseling after his discharge. All in all, the record does not substantially support Mr. Rhodes's claim that he had a medically cognizable abnormal "mode of being" or condition.

■ Even assuming the question of an abnormal condition is enough to go to a jury, however, Mr. Rhodes does not show that URM discriminated against him because of his drug abuse. The nature of this inquiry is factual, dependent on the employer's documentation and other relevant facts. *Sherman v. State*, 128 Wn.2d 164, 202, 905 P.2d 355 (1995). One element of the question is whether the employer reasonably accommodated the employee's condition. *Id.*; *Doe*, 121 Wn.2d at 17. Mr. Rhodes contends the primary reason he was discharged was because he was chemically dependent. The record does not support this assertion. URM entered into a reentry agreement with Mr. Rhodes after the first drug test failure. This agreement set certain requirements for Mr. Rhodes's continued employment, including submission to drug tests, attendance at a support group meeting for 20 weeks and strict compliance with company rules. Mr. Rhodes admits he agreed to and signed this agreement. The employee handbook clearly sets out the company's rules against drug use. Violation of either the reentry agreement or the antidrug policy is grounds for discipline, including discharge.

■ Additionally, an employer's duty to reasonably accommodate an employee's handicap does not arise until the employee gives notice of the disability. *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408, 899 P.2d 1265 (1995). In other words, there can be no disability discrimination if the employer lacks notice that the employee suffers from a

serious medical condition. *Hume v. American Disposal Co.*, 124 Wn.2d 656, 671-72, 880 P.2d 988 (1994), *cert. denied*, 513 U.S. 1112 (1995). Mr. Rhodes repeatedly lied to his employer and to Dr. Springel regarding the extent of his drug problem. He does not show that URM knew or should have known enough about his condition to accommodate it. The fact that URM allowed him time off with pay for evaluation of his problem after the April drug test failure and allowed him to continue working subject to the terms of the reentry agreement indicates reasonable accommodation of the problem as it was perceived.

To summarize, the record shows URM discharged Mr. Rhodes because he violated the terms of his reentry agreement and the employment handbook. Mr. Rhodes admits he understood he was fired for that reason. Because he does not present evidence that his drug abuse was a condition, or that it was the real reason for his termination, he fails to establish a prima facie case of handicap discrimination. *Doe*, 121 Wn.2d at 14-15.

■ We note that even if Mr. Rhodes had established that URM discriminated against him because of his uncontrolled drug abuse, he still fails to establish a viable claim of handicap discrimination. The antidrug policy expressed in the employment handbook is a reasonable safety precaution applicable to all of URM's employees and is thus a bona fide occupational qualification (BFOQ). WAC 162-22-070(3). The violation of a BFOQ is a statutory justification for discrimination. *Kastanis v. Educational Employees Credit Union*, 122 Wn.2d 483, 493, 859 P.2d 26, 865 P.2d 507 (1993). Consequently, even if Mr. Rhodes had succeeded in establishing a prima facie case of handicap discrimination, his failure to satisfy the BFOQ that prohibits working under the influence of controlled substances defeats his claim. *Blanchette v. Spokane County Fire Protection Dist. No. 1*, 67 Wn. App. 499, 502-03, 836 P.2d 858 (1992). This result is especially clear in a case such as this, where the inherent dangers in driving a truck on public roads while under the influence of mind-altering drugs supports ap-

plication of a safety-sensitive BFOQ. *Brady*, 105 Wn.2d at 777.

Affirmed.

KURTZ and KATO, JJ., concur.

Review denied at 139 Wn.2d 1006 (1999).