[No. 24821-2-II. Division Two. July 7, 2000.]

DEBRA FISCHER-MCREYNOLDS, *Appellant*, V. LYLE QUASIM, *as Secretary of the Department of Social and Health Services*, ET AL., *Respondents*.

802

*William M. Hanbey* (of *Ditlevson, Rodgers, Hanbey & Dixon, P.S.*), for appellant.

*Christine O. Gregoire, Attorney General,* and *Elizabeth Delay Brown, Assistant,* for respondents.

SEINFELD, J. — Debra Fischer-McReynolds sued her former employer, the Department of Social and Health Services (DSHS),[1] for intentional or negligent failure to provide a safe workplace and for failure to accommodate a disability. The trial court granted DSHS's motion for summary judgment. Fischer-McReynolds appeals, arguing that the trial court erred in finding that she (1) had not exhausted her administrative remedies, and (2) had not established the elements of the failure to accommodate claim. We affirm.

## FACTS

DSHS hired Fischer-McReynolds in 1990 to work in their Aging and Adult Services Division. Her job entailed frequent travel, but her base of operations was in Tacoma.

In August 1996, Fischer-McReynolds began a personal relationship with a co-worker, Ralph Dean. On January 8, 1997, another co-worker, Linda Rogers, reported to her supervisor a conversation that she had with Dean a few days earlier. According to Rogers, Dean said that Fischer-McReynolds had threatened to tell his wife about their affair. Dean then showed Rogers a knife he was carrying because he did not know what Fischer-McReynolds was going to do. He said he was prepared to use it if Fischer-McReynolds gave him any trouble.

Later that day, after asking security to stand by and instructing both Fischer-McReynolds and Rogers to leave the building, management removed Dean from the worksite. Dean's supervisor asked Dean to leave, instruct-

---

[1] We refer to the respondents collectively as DSHS.

ing him to remain at his home on alternative work assignment. That afternoon, management deleted Dean's personal security code to enter the building from the door keypad.

The next day, January 9, 1997, management formally assigned Dean to work at his residence until further notice and directed him not to return to the worksite or to any other state office without his supervisor's permission. That same day, Fischer-McReynolds obtained a protection order from the Thurston County Superior Court. The order prohibited Dean from coming within four blocks of Fischer-McReynolds' home or place of employment.

At the end of January, DSHS management permanently reassigned Dean to the Aging and Adult Services Division in Lacey, Washington, and directed him not to return to his former worksite in Tacoma. Nothing in the record indicates that he violated this direction or had any direct contact with Fischer-McReynolds thereafter.

Fischer-McReynolds contends that after Dean was reassigned, friction began at her workplace, including complaints made against her by her co-workers and by persons at institutions where she had conducted surveys. She disputed the complaints, filing grievances under her collective bargaining agreement. She pursued her grievances through the "Secretary level," where she was represented by counsel. The Secretary of DSHS, Lyle Quasim, through his designee, Bill Palmer, responded to Fischer-McReynolds' grievances in a letter dated June 5, 1997, to Fischer-McReynolds' union representative. Thereafter, Fischer-McReynolds apparently abandoned the grievance process.

At about the time of the grievance conference, Fischer-McReynolds gave notice to the head of her division that she had a disabling condition that required accommodation. In his June 5 letter, Palmer addressed the accommodation issue. He asked the union representative to assist Fischer-McReynolds in making her request to DSHS for accommodation. He also reminded her that she would need to

provide medical information relating to that request.

On June 11, 1997, Fischer-McReynolds served DSHS with a complaint seeking injunctive relief. She sought costs and attorney fees and asked to be returned to "status quo ante," but gave no indication of what this involved. On the same day that she served the complaint, Fischer-McReynolds filed a motion for a temporary injunction to obtain the relief requested in the complaint.

In her motion for injunctive relief, Fischer-McReynolds argued that her requested relief was mandated by Governor Lowry's Executive Order 96-05, which related to how state agencies deal with domestic violence. The superior court denied her motion with prejudice in March 1998.

Fischer-McReynolds then moved to amend her complaint to assert (1) intentional or negligent failure to provide a safe workplace and (2) failure to accommodate a disability. At the hearing on the motion, Fischer-McReynolds' counsel confirmed that Fischer-McReynolds sought placement in status quo ante and damages for the two causes of action named in the amended complaint. The court granted Fischer-McReynolds' motion to amend.

During discovery, Fischer-McReynolds identified her counselor and advocate, Peg Cain, and her physician, Dr. John Leraas, as experts on the issue of disability. Fischer-McReynolds testified at deposition that Cain had diagnosed and documented her disability and that Dr. Leraas had diagnosed her with depression and posttraumatic stress disorder (PTSD). But when DSHS deposed Cain and Leraas, it found that neither had diagnosed Fischer-McReynolds as disabled. Cain testified at her deposition that she does not render medical diagnoses; Dr. Leraas testified that he did not recall discussing the matter with Fischer-McReynolds and had not diagnosed Fischer-McReynolds with PTSD or any other handicap or disability.

DSHS then moved for summary judgment. Along with its summary judgment motion, DSHS offered the declarations of Linda Ronco, Fischer-McReynolds' immediate supervisor,

and Pat Lashway, the Director of Residential Care Services. Fischer-McReynolds moved to strike these declarations and the court granted the motion, apparently holding that they were unnecessary because Fischer-McReynolds had failed to make a sufficient showing to support her claims.

The court then granted DSHS's motion for summary judgment, finding that Fischer-McReynolds had failed to present evidence of a disability and had failed to assert her claim of an unsafe workplace in the proper forum. Fischer-McReynolds appealed the court's order, and DSHS timely filed its cross-appeal, challenging the trial court's exclusion of the Ronco and Lashway declarations.

## SUMMARY JUDGMENT

### I. FAILURE TO ACCOMMODATE

DSHS argues that Fischer-McReynolds has failed to present evidence of a disability and, therefore, cannot sustain a claim for failure to accommodate that disability. Fischer-McReynolds disagrees, citing the definition of disabled in former WAC 162-22-040(1) (1998), which states, in part, that a person is considered disabled where an abnormal "sensory, mental, or physical condition" is "perceived to exist." Fischer-McReynolds presented evidence that she perceived herself to be disabled and had told her DSHS supervisors she was depressed and/or suffering from PTSD; she contends this was sufficient to put DSHS on notice of a disability requiring accommodation.

■■ When reviewing summary judgment, we engage in the same inquiry as the trial court and review the evidence de novo. *Lilly v. Lynch*, 88 Wn. App. 306, 311, 945 P.2d 727 (1997). We will grant a summary judgment only if, after viewing the record along with all reasonable inferences that we may draw from it in the light most favorable to the nonmoving party, we can say that as a matter of law (1) there is no genuine issue of material fact, (2) all reasonable persons could reach only one conclusion, and (3) the moving party is entitled to judgment. *Olympic Fish Prods., Inc. v. Lloyd*, 93 Wn.2d 596, 602, 611 P.2d 737 (1980). A "material

fact is one upon which the outcome of the litigation depends." *Geppert v. State*, 31 Wn. App. 33, 39, 639 P.2d 791 (1982).

■ The moving party bears the initial burden of showing the absence of an issue of material fact. *Young v. Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). Where, as here, the moving party is a defendant who met this initial burden, the inquiry shifts to the plaintiff, the party with the burden of proof at trial, to produce specific facts that show the existence of a genuine issue. *Young*, 112 Wn.2d at 225; *Las v. Yellow Front Stores, Inc.*, 66 Wn. App. 196, 198, 831 P.2d 744 (1992). Where there is "a complete failure of proof concerning an essential element of the nonmoving party's case," all other facts become immaterial and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

■ ■ The Washington Law Against Discrimination, chapter 49.60 RCW, provides that an employer has an affirmative duty to reasonably accommodate a disabled employee and that an employer's failure to do so constitutes unlawful discrimination. *Swinford v. Russ Dunmire Oldsmobile, Inc.*, 82 Wn. App. 401, 413, 918 P.2d 186 (1996) (citing RCW 49.60.180);[2] *see also Doe v. Boeing Co.*, 121 Wn.2d 8, 18, 846 P.2d 531 (1993) (citing WAC 162-22-080). To establish a prima facie case of a failure to accommodate, Fischer-McReynolds must show that (1) she is handicapped,[3] (2) she is qualified to fill a vacant position with her employer, and (3) her employer failed to reasonably accommodate her handicap. *Christiano v. Spokane County Health Dist.*, 93 Wn. App. 90, 93, 969 P.2d 1078 (1998) (citing *Reese v. Sears, Roebuck & Co.*, 107 Wn.2d 563, 579, 731 P.2d 497 (1987), *overruled on other grounds*, *Phillips v. City of*

---

[2] Under RCW 49.60.180(3), it is an "unfair practice" to "discriminate against any person in compensation or in other terms or conditions of employment because of . . . the presence of any sensory, mental, or physical disability . . . ."

[3] The relevant statutes and case law use the terms "handicapped" and "disabled" interchangeably.

*Seattle*, 111 Wn.2d 903, 766 P.2d 1099 (1989)). To establish the first element, Fischer-McReynolds must "produce evidence of handicap." *Swinford*, 82 Wn. App. at 414-15.

■ ■ The statute does not define "disability," but the regulations accompanying the statute define it as an abnormal condition that is "medically cognizable or diagnosable," "exists as a record or history," or "is perceived to exist, whether or not it" really exists. Former WAC 162-22-040;[4] *Rhodes v. URM Stores, Inc.*, 95 Wn. App. 794, 799, 977 P.2d 651, *review denied*, 139 Wn.2d 1006 (1999). An employer's duty to accommodate arises only after the employee gives notice of the disability. *Goodman v. Boeing Co.*, 127 Wn.2d 401, 408, 899 P.2d 1265 (1995).

■ Generally, whether a person is "handicapped" is a question of fact for the jury. *Doe*, 121 Wn.2d at 15; *Phillips*, 111 Wn.2d at 909-10. But "the trial court may decide factual issues as a matter of law if there is only one conclusion reasonable minds could reach." *Rhodes*, 95 Wn. App. at 799.

■ Here, Fischer-McReynolds fails to present a prima facie case of failure to accommodate because she has not presented evidence of a disability. Her argument that she

---

[4] Former WAC 162-22-040 provides, in pertinent part:

(1) For the purpose of determining whether an unfair practice under RCW 49.60.180 . . . has occurred:

(a) A condition is a "sensory, mental, or physical disability" if it is an abnormality and is a reason why the person having the condition . . . was discriminated against in other terms and conditions of employment . . . . In other words, for enforcement purposes a person will be considered to be *disabled* by a sensory, mental, or physical condition if he or she is *discriminated against because of the condition* and the condition is abnormal.

(b) "The presence of a sensory, mental, or physical disability" includes, but is not limited to, circumstances where a sensory, mental or physical condition:

(i) Is medically cognizable or diagnosable;

(ii) Exists as a record or history; or

(iii) Is perceived to exist, whether or not it exists in fact.

(2) An example of subsection (1)(b)(ii) is a medical record showing that the worker had a heart attack five years ago. An example of subsection (1)(b)(iii) is rejection of a person for employment because he had a florid face and the employer thought that he had high blood pressure, but in fact he did not have high blood pressure.

had established the presence of a disability merely by stating that she perceived a stress problem is unpersuasive. If the employee is relying on perception to establish disability, the employer, not the employee, must perceive the disability. *See Rhodes*, 95 Wn. App. at 800-01; former WAC 162-22-040(2) ("rejection of a person for employment because he had a florid face and the *employer thought* that he had high blood pressure") (emphasis added).

Fischer-McReynolds offered no evidence that her employer perceived her as disabled. And she provided no other support for her claim that she was depressed and/or suffering from PTSD. Her unsupported claim was inadequate to show that she gave notice to DSHS of an alleged disability or that she, in fact, suffered from such a disability. Consequently, the trial court did not err in granting summary judgment.

## II. FAILURE To PROVIDE A SAFE WORKPLACE

Fischer-McReynolds cites to the Washington Industrial Safety and Health Act of 1973 (WISHA), chapter 49.17 RCW, Executive Order 96-05, and public policy gleaned from several unrelated statutes to argue that DSHS had a duty to provide a safe workplace for her and either intentionally or negligently failed to do so. DSHS maintains that Fischer-McReynolds brought this claim in the wrong forum and that, in any event, she failed to show that her workplace was unsafe. Specifically, DSHS argues that Fischer-McReynolds had a duty as a public employee subject to the State Civil Service Law, chapter 41.06 RCW, to exhaust her administrative remedies before commencing a civil lawsuit, but failed to do so.

The general purpose of the Civil Service Law is to

establish for the state a system of personnel administration based on merit principles and scientific methods governing the appointment, promotion, transfer, layoff, recruitment, retention, classification and pay plan, removal, discipline, training and career development, and welfare of its civil employees, and other incidents of state employment. All appointments and

promotions to positions, and retention therein, in the state service, shall be made on the basis of policies hereinafter specified.

RCW 41.06.010.

This statute also provides for a personnel resources board (PRB), which is empowered to adopt rules for the "reduction, dismissal, suspension, or demotion of an employee." RCW 41.06.110, .150(1); *see Reninger v. Department of Corrections*, 79 Wn. App. 623, 631, 901 P.2d 325 (1995), *aff'd*, 134 Wn.2d 437, 951 P.2d 782 (1998). Pursuant to this authority, the PRB adopted a comprehensive set of merit system rules governing the terms and conditions of state employment. *Reninger*, 79 Wn. App. at 631 (citing Title 356 WAC).

The Civil Service Law and the PRB's regulations give civil service employees the right to appeal any violation of civil service or merit system rules to the State Personnel Appeals Board (PAB). RCW 41.06.170(2); WAC 358-20-010, -020; *Reninger*, 79 Wn. App. at 631. The employee then has the right to appeal the decision of the PAB to the superior court. RCW 41.64.130, .140.

As this court stated in *Reninger*, "[t]his elaborate system of rules, procedures, and remedies provides a vehicle and forum created specifically to resolve civil service employment relations claims." 79 Wn. App. at 631. In addition to appealing to the PAB, Fischer-McReynolds was also entitled, through her union's collective bargaining agreement with DSHS, to seek redress of any civil service disputes or alleged unfair labor practices through the grievance process. This process culminates in arbitration before the PRB. RCW 41.06.150; WAC 356-42-055 through -100.

Fischer-McReynolds clearly was alleging violations of civil service statutes and regulations. Thus, she could not seek remedies in superior court until she first pursued available administrative remedies. *Reninger*, 79 Wn. App. at 631. Fischer-McReynolds began this process by taking her grievances to the Secretary of DSHS, but she then

abandoned her administrative remedies. Because she did not exhaust her rights under the Civil Service Law, the trial court properly granted summary judgment dismissing this claim.

 Moreover, Fischer-McReynolds has failed to show the existence of an unsafe condition at her worksite. WISHA incorporates an employer's common law duty to take those precautions to keep the workplace reasonably safe that an ordinarily prudent person would take. *McCarthy v. Department of Soc. & Health Servs.*, 110 Wn.2d 812, 818, 759 P.2d 351 (1988); RCW 49.17.060.

The record shows that Fischer-McReynolds' supervisors took appropriate steps by (1) removing Dean from the worksite immediately upon learning of his knife and his potential threat, (2) placing him on home assignment, (3) instructing him not to return to the worksite, (4) deleting his keypad code, and (5) reassigning him to another DSHS location in another city. There is no showing that DSHS intentionally or negligently breached its duty of care toward Fischer-McReynolds under WISHA standards.

Fischer-McReynolds also contends that the Governor's Executive Order 96-05 established a cause of action for state employees, allowing them to recover damages for the failure of their employing agency to comply with the Order's directives. The Order, which the Governor signed three months before the Rogers-Dean conversation, requires state agencies to develop policies and procedures related to domestic violence. It does not describe any consequences for failure to comply or provide a basis for holding an agency liable for noncompliance.

 As DSHS points out, in the absence of a constitutional or statutory grant of authority from the Legislature, the Governor cannot create obligations, responsibilities, conditions or processes having the force and effect of law merely by issuing an executive order. 1991 Op. Att'y Gen.

No. 21, at 1;[5] *see also* WASH. CONST. art. II, § 1 ("The legislative authority of the state of Washington shall be vested in the legislature . . . ."); *Young v. State*, 19 Wash. 634, 637, 54 P. 36 (1898).

The Attorney General Opinion cited by DSHS explains that documents entitled "Executive Order" are of three basic types: (1) General Policy Statements, which are intended to persuade or encourage persons, both within and without government, to accomplish the policy set out in the order; (2) Directives, which serve to communicate to state agencies what the Governor would like them to accomplish (agency heads risk removal from office if they do not comply with the order) and (3) Orders with Operative Effect. 1991 Op. Att'y Gen. No. 21. Only the last category can have the force and effect of law, and then only if a statute or constitutional provision grants the Governor the authority to issue such orders. 1991 Op. Att'y Gen. No. 21.

The Legislature has enacted statutes that specifically authorize the Governor to issue orders with operative effect. For example, RCW 43.06.010(12) authorizes the Governor to declare a state of emergency under certain circumstances. Once the Governor declares a state of emergency, RCW 43.06.220 empowers the Governor to issue orders related to the emergency, such as establishing a curfew, and provides that violation of any provision of such orders will be a gross misdemeanor.

While the Washington State Constitution grants the Governor certain express powers, the Governor lacks inherent legislative power except as provided in the Constitution or delegated by a statute. *Young*, 19 Wash. at 637; *see also* 1991 Op. Att'y Gen. No. 21. Here, Fischer-McReynolds has not pointed to any statute or constitutional provision granting authority to the Governor to issue an

[5] The Attorney General Opinion states, in part:

The legislative authority of the State of Washington is vested in the Legislature. In absence of a statute or constitutional provision that serves as a source of authority authorizing the Governor to act, the Governor cannot create obligations, responsibilities, conditions or processes having the force and effect of law by the issuance of an executive order.

order with operative effect in this context. Therefore, we must conclude that Executive Order 96-05 is either a general policy statement or a directive. In either case, it lacks the force and effect of law and Fischer-McReynolds cannot rely upon it to obtain monetary relief.

Finally, we decline to consider Fischer-McReynolds' additional claims, which she failed to assert in her amended complaint. These include hostile working environment, gender related harassment, and retaliation. The purpose of a complaint is to apprise the defendant of the nature of the plaintiff's claims and the legal grounds upon which the claims rest. *Christensen v. Swedish Hosp.*, 59 Wn.2d 545, 548, 368 P.2d 897 (1962). Generally, failure to raise an issue before the trial court precludes a party from raising it on appeal. *Seattle-First Nat'l Bank v. Shoreline Concrete Co.*, 91 Wn.2d 230, 240, 588 P.2d 1308 (1978); *Browne v. Cassidy*, 46 Wn. App. 267, 270, 728 P.2d 1388 (1986) (" '[a] lawsuit cannot be tried on one theory and appealed on others' ") (quoting *Teratron Gen. v. Institutional Investors Trust*, 18 Wn. App. 481, 489, 569 P.2d 1198 (1977)).

Fischer-McReynolds' passing reference to other possible theories to support her claims does not indicate a need to make an exception to the general rule. Further, she fails to support these claims with relevant authority. We need not consider arguments for which a party has cited no authority. *State v. Dennison*, 115 Wn.2d 609, 629, 801 P.2d 193 (1990).

### III. CROSS-APPEAL OF EXCLUSION OF DECLARATIONS

In its cross-appeal, DSHS argues that the trial court erred in granting Fischer-McReynolds' motion to strike the Ronco and Lashway declarations. Because we affirm the summary judgment ruling, we need not reach this issue.

Accordingly, we affirm.

ARMSTRONG, C.J., and HOUGHTON, J., concur.