Chana BOYKO, Appellant,

v.

ANCHORAGE SCHOOL DISTRICT, Appellee.

No. S–13468.

Supreme Court of Alaska.

Jan. 27, 2012.

Charles W. Coe, Law Office of Charles W. Coe, Anchorage, for Appellant.

Howard S. Trickey and Cheryl Mandala, Jermain Dunnagan & Owens, P.C., Anchorage, for Appellee.

Before: CARPENETI, Chief Justice, WINFREE, and STOWERS, Justices.

*OPINION*

STOWERS, Justice.

## I.  INTRODUCTION

Chana Boyko is a teacher who resigned in lieu of termination from the Anchorage School District after violating a "last chance agreement."  She alleges the School District breached a resignation agreement in which it promised not to release negative information about her to prospective employers.  Boyko sued, claiming that she was terminated as a result of disability discrimination and that the School District's comments made in violation of the resignation agreement breached

the covenant of good faith and fair dealing and interfered with her prospective contractual relations. The superior court granted the School District summary judgment on all claims, concluding that the District had non-discriminatory reasons for termination and that its comments were protected by statutory immunity. Boyko appeals. We reverse the grant of summary judgment on the claims of statutory immunity, breach of the covenant of good faith and fair dealing, and interference with prospective contractual relations, because there are genuine issues of material fact regarding these claims. We affirm summary judgment on the discrimination claim.

## II. FACTS AND PROCEEDINGS

In the fall of 2004 Chana Boyko was employed as a teacher at Goldenview Middle School in the Anchorage School District. One morning she arrived at school late and appeared to be intoxicated. The school's principal, Julie Maker, sent Boyko to Providence Breakthrough Program for an assessment and alcohol testing. A blood alcohol content (BAC) test revealed that Boyko's BAC was 0.155 percent. Boyko consequently completed an out-of-state treatment program and returned to Providence Breakthrough for continuing treatment.

The School District had Boyko sign a "last chance agreement," which the School District uniformly required of employees who reported to work intoxicated. The agreement conditioned Boyko's continued employment upon several provisions, including committing to remain free of alcohol, completing treatment with Providence Breakthrough, keeping the School District apprised of her progress in treatment, and meeting all other terms and conditions of the last chance agreement.

Soon after, Boyko limited the School District's access to her treatment records and neglected to tell the School District about missed treatment appointments. Boyko also took a BAC test that registered her BAC at .007. Boyko did not attend a partial hospitalization program that Providence Breakthrough recommended after her positive BAC test and was discharged from the pro-

gram. Providence Breakthrough informed the School District that Boyko had not complied with the conditions of her program, that she tested positive for alcohol, that she refused to attend the hospitalization treatment program, and that she was discharged from Providence Breakthrough's program against medical advice.

As a result of Boyko's discharge from Providence Breakthrough, the School District placed her on administrative leave and she received a notice of proposed dismissal and pre-termination hearing. Upon advice from a representative of the teacher's union, Boyko resigned so that she would not be terminated.

Before turning in her letter of resignation, Boyko spoke on the phone with Eric Tollefsen, the executive director of human resources for the School District. Boyko secretly recorded the phone conversation. The following exchange occurred:

> MS. BOYKO: ... If I resign, then, at least I preserve my right to go to work someplace else?
>
> MR. TOLLEFSEN: Absolutely. And there is nothing in the record, and there would be nothing that ... we would release to anybody else. That's true.... I would have a record of it here ...
>
> MS. BOYKO: Uh-huh (affirmative).
>
> MR. TOLLEFSEN: ... and, you know, you wouldn't be eligible for—for rehire in this district, but you would certainly be eligible for—I mean, you wouldn't have anything negative on your record if you were to apply somewhere else.[1]

Boyko testified in her deposition that when she handed in her letter of resignation, Tollefsen told her that she would not have any problems finding work in another school district and that "no information would be given to anyone that would prevent [her] from being considered for a position."

After she resigned, Boyko applied for a position with the Matanuska–Susitna (Mat–Su) Borough School District. She alleged that, when contacted as a job reference, "the [Anchorage School] District failed to repre-

---

1. This conversation will be referred to through-   out as the "resignation agreement."

sent [her] qualifications and failed to represent positive performance evaluations over the years." Carol Comeau, superintendent of the Anchorage School District, declined to provide a recommendation at Boyko's request to the Mat–Su School District because she did not directly supervise Boyko and because of the "circumstances leading up to the termination of [Boyko's] employment relationship with the District."

Boyko then applied for a position with the Alaska Military Youth Academy. Boyko alleged that the School District reported negatively on her job performance by telling the Military Youth Academy that she was not eligible for future employment with the School District. Irene Lee, the deputy director of the Military Youth Academy at the time of Boyko's application, stated in an affidavit that "Boyko's last supervisor/principal at the Anchorage School District ... advised [us] that she would not recommend that [the Military Youth Academy] hire Ms. Boyko as a teacher." James Jones, the principal of the Military Youth Academy at the time, stated in an affidavit that Boyko's last principal told him that she would not rehire Boyko. Nevertheless, the Military Youth Academy hired Boyko. Boyko later attempted to rescind her resignation letter to the School District.

In April 2007 Boyko filed a four-count complaint in superior court alleging that the School District (I) discriminated against her based on disability; (II) breached the covenant of good faith and fair dealing by breaching the resignation agreement; (III) breached her collective bargaining agreement; and (IV) interfered with her prospective contractual relations by breaching the resignation agreement.

The School District filed a motion for summary judgment, arguing Boyko was not disabled, the School District had a non-discriminatory reason for termination, Boyko's failure to exhaust her administrative remedies barred her from claiming a breach of the covenant of good faith and fair dealing, and the School District did not lie to any potential future employers.

The superior court granted the School District summary judgment on Counts I, III, and IV. The court granted the School District summary judgment for failure to exhaust administrative remedies on Count II to the extent that the claim related to Boyko's employment agreement, but denied summary judgment "without prejudice as to possible rebriefing" to the extent that it related to Boyko's resignation agreement.

Both parties moved for reconsideration. Boyko argued that the court should reconsider its decision to grant summary judgment on Count IV, her claim of interference with prospective contractual relations. The School District argued that no claims could arise from Maker's statements because AS 09.65.160 provides employers who disclose job performance information with immunity. The court agreed and granted the School District summary judgment on Count II. The court found that, regardless of any promises the School District made not to release negative information about Boyko, the School District was statutorily immune from civil liability for any disclosures. The court did not reconsider its decision on Count IV. Boyko filed another motion for reconsideration of the court's full summary judgment on Count II. The court affirmed its previous grant of summary judgment and issued a final judgment.

Boyko appeals, arguing that the superior court erred in granting the School District immunity under AS 09.65.160. She also argues that the School District breached her resignation agreement and as a result breached the covenant of good faith and fair dealing and interfered with her prospective contractual relations. She also argues that the superior court erred in dismissing her claim of disability discrimination.

## III. DISCUSSION

### A. Standard Of Review

■ We review a superior court's grant of summary judgment de novo.[2] In our review, we must determine "whether any genu-

2. *Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995) (citing *Tongass Sport Fishing Ass'n v. State*, 866 P.2d 1314, 1317 (Alaska 1994)).

ine issue of material fact exists and whether on the established facts the moving party is entitled to judgment as a matter of law." [3] We draw all factual inferences in favor of, and view the facts in the light most favorable to, the party against whom summary judgment was granted.[4]

■ We interpret the meaning of a statute using our independent judgment, "interpreting the statute according to reason, practicality, and common sense, considering the meaning of the statute's language, its legislative history, and its purpose." [5]

## B. There Is A Genuine Issue Of Material Fact Whether The School District Breached The Resignation Agreement.

Boyko argues that Principal Maker's comments to the Alaska Military Youth Academy and Superintendent Comeau's refusal to give her a recommendation breached the resignation agreement. The School District argues that there was no breach because it did not make any negative or derogatory statements about Boyko.

To overcome summary judgment, Boyko must set forth specific facts arising from admissible evidence showing that there is a genuine issue of material fact whether the School District breached the agreement.[6] Because this matter comes to us on an appeal of a grant of summary judgment against Boyko, we take all inferences in her favor and assume the resignation agreement was a quid pro quo contract for her resignation.

Boyko included with her opposition to summary judgment the affidavit of Irene Lee, the deputy director of the Alaska Military Youth Academy. Lee stated in her affidavit that "[w]hen Ms. Boyko's last supervisor/principal at the Anchorage School District was contacted we were advised that she would not recommend that we hire Ms. Boyko as a teacher for our program."

Boyko attached the affidavit of James Jones, the principal at the Military Youth Academy, to her first motion for reconsideration, filed in response to the superior court's invitation for additional briefing. He stated that Maker "stated she would not rehire Ms. Boyko if she reapplied."

The School District contends that neither statement by Maker was a release of negative information because her statements were not "information" but rather opinions and they did not provide any details about Boyko's separation from the School District.

■ Not providing details about the separation does not necessarily establish that the School District did not violate the resignation agreement. Tollefsen's promise in the resignation agreement was not limited to details about the separation: it covered "anything negative." The promise was also not limited to negative "information." Tollefsen told Boyko that she would not have "anything negative" on her record and Boyko alleged that he told her that there would be no "negative or derogatory statements made" about her. Maker's recommendation that the Military Youth Academy not hire Boyko and her assertion that she would not rehire Boyko, even if only opinions, are arguably also negative statements about Boyko. By producing these sworn statements, Boyko successfully raised a genuine issue of material fact regarding whether Maker's comments violated the resignation agreement.

■ Superintendent Comeau's refusal to provide a recommendation for Boyko, however, did not violate the resignation agreement. The School District promised not to make negative statements about Boyko, but it did not promise to provide positive statements or recommendations.

■ We reverse the grant of summary judgment and remand to the superior court for trial on the issue of whether Maker's

---

**3.** *Id.* at 1051–52 (citing *Wright v. State,* 824 P.2d 718, 720 (Alaska 1992)).

**4.** *Rockstad v. Erikson,* 113 P.3d 1215, 1219 (Alaska 2005) (citing *Ellis v. City of Valdez,* 686 P.2d 700, 702 (Alaska 1984)).

**5.** *Lot 04B & 5C, Block 83 Townsite v. Fairbanks N. Star Borough,* 208 P.3d 188, 191 (Alaska 2009) (internal quotations omitted).

**6.** *See Witt v. State, Dep't of Corr.,* 75 P.3d 1030, 1033 (Alaska 2003).

alleged comments violated the resignation agreement.[7]  Among the jury issues at trial will be whether the resignation agreement was in fact a contract and, if so, what performance was called for on the part of the School District.

### C.  There Is A Genuine Issue Of Material Fact Whether The School District Waived Immunity.

Alaska Statute AS 09.65.160 provides:

An employer who discloses information about the job performance of an employee or former employee to a prospective employer of the employee or former employee at the request of the prospective employer or the employee or former employee is presumed to be acting in good faith and, unless lack of good faith is shown by a preponderance of the evidence, may not be held liable for the disclosure or its consequences.  For purposes of this section, the presumption of good faith is rebutted upon a showing that the employer or former employer

(1) recklessly, knowingly, or with a malicious purpose disclosed false or deliberately misleading information; or

(2) disclosed information in violation of a civil right of the employee or former employee that is protected under AS 18.80 or under comparable federal law.

The superior court found that the School District was entitled to immunity under this statute and as a result granted the School District summary judgment on the claim of

interference with prospective contractual relations and the claim of breach of the covenant of good faith and fair dealing.

▮   Boyko argues that AS 09.65.160 does not apply because the parties negotiated around it in the resignation agreement.[8]  She raised this argument for the first time in her second motion for reconsideration.  Normally we do not consider issues raised for the first time in a motion for reconsideration.[9]  But we have held that a motion for reconsideration "permissibly raised new arguments and new facts" when the superior court "denied [the] original motion 'without prejudice' and expressly invited a second motion."[10]  We may consider the arguments in Boyko's motions for reconsideration because the superior court, in its first order on the School District's motion for summary judgment, partially denied summary judgment "without prejudice as to possible rebriefing."  Although the argument came in Boyko's second motion for reconsideration, the court's invitation for rebriefing was apparently not limited to the party's first responses.  Boyko's second motion for reconsideration therefore sufficiently raised her argument for consideration on appeal.

▮   "[S]tatutorily created rights can generally be waived."[11]  A party may impliedly waive a legal right if there is "direct, unequivocal conduct indicating a purpose to abandon or waive the legal right."[12]  "Whether a waiver occurred is a question of fact."[13]  In this case, there is a genuine issue of material fact whether Tollefsen's statements in the resignation agreement waived

---

7.  The School District argues that Boyko waived her rights under the resignation agreement by later signing a release allowing the School District to provide job performance information.  This waiver has no bearing on the issues on appeal because the release form that Boyko signed only authorized the School District to share information with the Mat–Su School District.  Boyko bases her appeal on the statements that Maker allegedly made to the Alaska Military Youth Academy, which is not operated by the Mat–Su School District.

8.  Boyko also argues that Maker's comments to the Military Youth Academy were outside the scope of AS 09.65.160 because the comments were not about Boyko's "job performance." Maker's statements, however, were within the scope of the immunity statute.

9.  *Clemensen v. Providence Alaska Med. Ctr.*, 203 P.3d 1148, 1155 (Alaska 2009).

10.  *Shea v. State, Dep't of Admin., Div. of Ret. & Benefits*, 204 P.3d 1023, 1029 n. 29 (Alaska 2009).

11.  *Deptula v. Simpson*, 164 P.3d 640, 645 (Alaska 2007).

12.  *Blood v. Kenneth Murray Ins., Inc.*, 68 P.3d 1251, 1255 (Alaska 2003) (quoting *Powers v. United Servs. Auto. Ass'n*, 6 P.3d 294, 298–99 (Alaska 2000)).

13.  *Id.* at 1254.

the School District's protection under AS 09.65.160. According to Boyko's deposition testimony, Tollefsen stated to Boyko when she resigned that "there is nothing in the record, and there would be nothing that ... we would release to anybody else." He allegedly stated further that Boyko "wouldn't be eligible for ... rehire in this district, but ... [she] wouldn't have anything negative on [her] record if [she] were to apply somewhere else." Boyko testified that Tollefsen also told her that "no one in the school district would make any kind of negative comment about [her] or about [her] employment." Viewing this evidence in the light most favorable to Boyko, Tollefsen's alleged statements could be considered an implied waiver of the School District's right to "disclose information about [Boyko's] job performance" without fear of liability.[14] Boyko has raised a genuine issue of material fact on whether the parties' resignation agreement included an implicit waiver of statutory immunity.

We reverse the superior court's determination that the School District was protected by AS 09.65.160 immunity. We remand on the issue whether Tollefsen's statements impliedly waived the School District's rights under AS 09.65.160. Because there are genuine issues of material fact whether the School District breached the resignation agreement and whether the School District waived its statutory immunity, it was error for the superior court to grant summary judgment on Boyko's claims of breach of the covenant of good faith and fair dealing and interference with prospective contractual relations. We reverse summary judgment as to those claims as well.

**D.  The Superior Court Properly Granted Summary Judgment On The Disability Discrimination Claim.**

Boyko claims that the superior court erred in granting the School District summary judgment on her disability discrimination claim under the Alaska Human Rights Act (AHRA). She specifically argues that the School District terminated her for being an alcoholic.

The AHRA, specifically AS 18.80.220(a), provides that "it is unlawful for ... an employer to ... bar a person from employment ... because of the person's ... physical or mental disability ... when the reasonable demands of the position do not require distinction on the basis of ... physical or mental disability."

We use a three-part analytical framework for claims under AS 18.80.220(a):

> First, the employee carries the initial burden under the statute of establishing a prima facie case of ... discrimination. The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason why the employee was discharged. Finally, the burden shifts back to the employee to show that the employer's stated reason for discharging the employee was in fact pretext.[15]

The parties do not dispute that Boyko raised a prima facie case of discrimination and that the School District presented a legitimate, nondiscriminatory reason for Boyko's discharge. We will assume that Boyko had a disability for the purpose of this case,[16] and focus on whether Boyko raised a genuine issue of material fact that the reason for discharge was pretextual.

To raise a genuine issue of material fact, Boyko must present more than "unsupported assumptions and speculation."[17] We will affirm summary judgment if the plaintiff "presents nothing more than [her] own subjective belief that the employer's asserted ground is a pretext."[18] We must

---

14. AS 09.65.160.

15. *Haroldsen v. OMNI Enters., Inc.*, 901 P.2d 426, 430 (Alaska 1995) (internal citations and alterations omitted).

16. Boyko argues that alcoholism is a disability. We have not previously addressed this issue, and we do not decide it here.

17. *Perkins v. Doyon Universal Servs., LLC*, 151 P.3d 413, 416 (Alaska 2006) (internal quotations omitted).

18. *Id.* (internal quotations and alterations omitted).

determine whether Boyko "raised sufficient doubts regarding the [School District's] stated justifications to permit a reasonable jury to infer that the reasons given [were] pretextual." [19]

Boyko presents three arguments to support her claim that the School District's stated reason for terminating her—that she violated the last chance agreement—was pretext: (1) Tollefsen promised her that she would not receive negative employment references, but he did not intend to keep that promise; (2) when she signed her last chance agreement, Tollefsen said that she would fail and that she was going to die; and (3) she was not allowed to explain herself after she was accused of violating the last chance agreement.

Boyko's first argument, that Tollefsen did not intend to keep his promise that she would not receive negative references, is not supported by any admissible evidence and presents only unsupported speculation.

Boyko's next argument, that the School District "wrote [her] off the minute they found out she was an alcoholic" and forced her to resign, is also conclusory and speculative. She points to Tollefsen's alleged statements to her when she signed the last chance agreement that she was a liar, that she was going to die, and that she would fail and probably be terminated. However, the School District did not immediately terminate her upon learning of her alcoholism, but instead made several attempts to assist her in rehabilitation by sending her to Providence Breakthrough and providing her with the last chance agreement. It only began the termination process after Boyko violated her last chance agreement, which provided a permissible reason for termination.[20] The District alleged that Boyko violated her last chance agreement three ways: (1) by changing the agreed-upon authorization allowing Providence Breakthrough to release information to the District; (2) by testing positive for alcohol at Providence Breakthrough; and (3) by not adhering to Hazeldon's conditions for release, which included continued sobriety. Boyko herself admitted that disability discrimination did not cause her to lose her job. Boyko's argument that Tollefsen's statements indicated that the School District's proffered reason was pretextual is not supported by any evidence.

Finally, Boyko argues that she was not allowed to explain at a pre-termination meeting Providence Breakthrough's decision to discharge her. It is undisputed that Boyko's last chance agreement conditioned her continued employment on successfully completing "the approved plan of continued rehabilitation from Providence Breakthrough," that her continuation of employment was "contingent upon [Boyko] satisfactorily meeting all of the terms" of the last chance agreement, and that her failure to do so would "subject [Boyko] to immediate discipline up to and including termination." Providence Breakthrough discharged Boyko from its rehabilitation program because it found that she had tested positive for alcohol and refused to attend a recommended hospitalization treatment program. Boyko's argument is that the School District did not give her an opportunity to explain Providence Breakthrough's decision. Implicit in her argument is that there may have been extenuating circumstances or that Providence Breakthrough's decision was invalid. There may have been arguments she could have made to Providence Breakthrough, but the School District was entitled to rely on Providence Breakthrough's determination. After Providence Breakthrough communicated to the School District its decision to discharge Boyko, the School District acted within the scope of the last chance agreement in terminating her. Boyko has not raised a genuine issue of material fact on whether the School District's decision to follow the terms of the last chance agreement was pretextual.

19. *Haroldsen,* 901 P.2d at 431–32.

20. *See Longen v. Waterous Co.,* 347 F.3d 685, 689 n. 4 (8th Cir.2003); *Brock v. Lucky Stores, Inc.,* 23 Fed.Appx. 709, 711–12 (9th Cir.2001); *Mararri v. WCI Steel, Inc.,* 130 F.3d 1180, 1182–83 (6th Cir.1997); *McKey v. Occidental Chem. Corp.,* 956 F.Supp. 1313, 1319 (S.D.Tex.1997); *Golson–El v. Runyon,* 812 F.Supp. 558, 561 (E.D.Pa.1993); *Rhodes v. URM Stores, Inc.,* 95 Wash.App. 794, 977 P.2d 651, 654 (1999).

Boyko raised no genuine issues of material fact on whether the School District's reason for termination was pretextual. We affirm the superior court's grant of summary judgment on the discrimination claim.

## IV. CONCLUSION

We REVERSE the grants of summary judgment on the claims of breach of the covenant of good faith and fair dealing and interference with prospective contractual relations and REMAND for trial. Among the jury issues at trial will be whether the agreement was in fact a contract and, if so, what performance was called for on the part of the School District and whether the District is statutorily immune. We AFFIRM the grant of summary judgment on the discrimination claim.

FABE, Justice, and CHRISTEN, Justice, not participating.

WINFREE, Justice, concurring.

I agree with the court's resolution of the summary judgment issues presented in this appeal. I write separately only to express my view that if Boyko and the School District actually entered into a resignation agreement as Boyko alleged, that agreement itself is a waiver of the School District's statutory immunity under AS 09.65.160. In the absence of an express reservation of its statutory immunity rights as a part of a resignation agreement, an employer cannot enter into an agreement limiting what the employer can say about the resigning employee and then rely on the statute to immunize itself from damages arising from · its breach of the agreement:

> A waiver can be accomplished either expressly or implicitly. An implied waiver arises where the course of conduct pursued evidences an intention to waive a right, *or is inconsistent with any other intention than a waiver, or where neglect to insist upon the right results in prejudice to another party.*[1]

To the extent the court suggests otherwise, by stating there is a genuine issue of material fact on whether the resignation agreement, if it exists, "*included* an implicit waiver of statutory immunity," (emphasis added) I disagree.

---

1. *Milne v. Anderson*, 576 P.2d 109, 112 (Alaska 1978) (emphasis added).